Anthony Linquata v. Commissioner.
Linquata v. Commissioner
Docket No. 31006.
United States Tax Court
1952 Tax Ct. Memo LEXIS 215; 11 T.C.M. (CCH) 501; T.C.M. (RIA) 52147; May 20, 1952
*215 Income from fishing operations - Boat owned in shares. - The petitioner purported to report as his own all of the income realized from operation of a commercial fishing boat. He was the owner of only a one-fourth interest and entitled to and received one-fourth of the income. The correct amount of his income is determined. Fraud penalty. - The petitioner knowingly understated his income as a member of the crew of the fishing boat. Fraud penalty sustained for the years in which there are deficiencies. Harry Bergson, Esq., 209 Washington St., Boston, Mass., for the petitioner. William C. W. Haynes, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and 50 per cent penalties as follows: Year
Deficiency
50% Penalty
1942
$15,932.77
$ 7,966.39
1943
39,087.49
19,543.75
1944
28,143.12
14,071.56
The petition assigns as error the respondent's failure to allow deductions for the full amount of expenses of operating a fishing boat and crew's shares, and in taxing to the petitioner all of the income of the fishing boat. The amount of deductible expenses has *216 been settled by stipulation. The issues for decision are whether the petitioner was entitled to all of the income of a fishing boat as sole owner or only one-fourth thereof, and whether there was fraud with intent to evade tax. Findings of Fact The petitioner is an individual who resides at Gloucester, Massachusetts. His income tax returns for the taxable years were filed with the Collector of Internal Revenue for the District of Massachusetts. The petitioner is and for many years has been a fisherman. In the taxable years, he was captain and the managing owner of the deep-sea fishing boat Natalie III. The managing owner is one of two or more owners of a boat who is appointed by the others to manage the boat. The petitioner owned a one-fourth interest in the Natalie III, his father, Marco Linquata, owned a one-half interest, his brother, Luigi Linquata, owned a one-fourth interest. The registration of the boat with the United States Customs Sevice showed Luigi's interest as the property of his son Thomas because at that time Luigi was not a citizen of the United States. The boat was operated on the lay system, under which receipts from the sales of fish were divided between *217 the boat and the crew. From the crew's share of sales proceeds, there was deducted the cost of ice, food, and oil for the particular trip before division among the crew members. The boat's share of the proceeds of sales was divisible among the owners in proportion to their interests in the boat. The boat's share was turned over to the father. The three owners met frequently at the father's house where at times each owner took out some cash and the balance was deposited in a bank account in the name of the boat; at other times all of the boat's share was deposited in a bank. The expenses of operating and maintaining the boat, and the cost of equipment for it were paid out of the boat's share. In the taxable years, Marco Linquata received one-half of the boat's share of the profits, Luigi Linquata received one-fourth of the profits, and the petitioner received one-fourth. For the years 1942, 1943, and 1944, the petitioner filed individual returns in which he included as his gross income amounts purporting to be his income as a member of the crew, and also the boat's gross income, deductions, and net income. The amounts shown on the returns were as follows: 1942
1943
1944
Boat's gross
income
$24,204.00
$35,077.80
$26,586.00
Boat's deduc-
tions
17,906.77
24,545.79
22,708.32
Boat's net
income
6,297.23
10,532.01
3,877.68
Income as crew
member
4,034.00
5,846.30
4,431.00
Gross income
$10,331.23
$16,378.31
$ 8,308.68
*218 The boat's share of the gross sales of fish, expenses of operation, and net income for the taxable years were as follows: 1942
1943
1944
Share of gross
sales
$37,435.44
$51,750.48
$40,896.24
Operating ex-
penses
14,455.53
20,470.85
18,666.61
Net income
$22,979.91
$31,279.63
$22,229.63
The petitioner's gross income, consisting of a one-fourth share of the boat's net income, and the correct amount of his income as a member of the crew were as follows: 1942
1943
1944
One-fourth of
boat's income
$ 5,744.98
$ 7,819.91
$ 5,557.41
Income as crew
member
5,344.14
7,976.18
6,458.65
Gross income
$11,089.12
$15,796.09
$12,016.06
There is no record of any income tax returns having been filed by Marco Linquata for the years 1942, 1943, and 1944. There is no record of income tax returns having been filed by Thomas Linquata for the years 1942 and 1943. The petitioner knowingly understated his income as a member of the crew of Natalie III. Part of any deficiencies that may result from corrections of the petitioner's gross income in accordance with the above schedules is due to fraud with intent to evade tax. *219 Opinion ARUNDELL, Judge: The respondent has included in the income of the petitioner the amounts that he determined to be the income attributable to the operations of the fishing boat Natalie III. His theory for so doing was that the petitioner was the sole owner of the boat, and he determined that the boat's share of the profits realized from the sales of fish was larger in each year than the amount reported by the petitioner. This case presents several unusual aspects. The petitioner purportedly reported as his income all of the fishing boat's income. It now develops that the amounts so reported were much less than the boat's share of the sales. The petitioner represented to revenue agents that he was the sole owner of the Natalie III. He says that he took that position on the advice of the person who prepared his returns. That person denies giving such advice. The petitioner now claims that he had only a one-fourth interest in the boat and was entitled only to that fraction of its income. The boat was initially registered with the Customs Service in the name of the petitioner as sole owner. Three days later the registration was changed to show ownership in the petitioner and *220 two co-owners, one of whom was a minor and who purportedly was representing his father who was not a citizen of the United States and, therefore, could not be recognized as the owner of any interest in a deep-sea fishing boat. The respondent has asserted a fraud penalty. The petitioner denies that there was any fraud, yet at the hearing his counsel conceded that he knowingly understated his share of the income of the crew of the boat. The parties have filed a stipulation which sets forth the correct amounts of the petitioner's portion of the crew's income for each year. These amounts are shown in our findings of fact. The stipulation also gives figures from which the boat's net income can be, and has been, determined in our findings. The stipulation leaves two questions for decision. First, whether the boat's share of income was income of the petitioner in its entirety or only to the extent of one-fourth. Second, whether there was fraud with intent to evade tax. We have found as facts that the petitioner was the owner of one-fourth interest in the Natalie III and that the boat's share of sales was divisible in proportion to ownership. The evidence leaves no doubt that the petitioner *221 did not own more than a one-fourth interest in the boat and that he was entitled to, and received as his own, no more than one-fourth of the boat's income. These facts are established by a long array of witnesses who had some part in the operations of the boat and were familiar with the facts as to its acquisition and its ownership. Such testimony is, of course, only evidentiary and we have not set it out at length in our findings. The findings made are the result of a thorough study of a lengthy record including numerous exhibits. Based on that study of the record and the figures in the stipulation, we have concluded and found the correct amounts of the petitioner's gross income, which consisted of his one-fourth share of the boat's income and his income as a crew member. On the record before us, we cannot ascertain whether or not the petitioner understated net income or whether or not there are deficiencies. If recomputations result in deficiencies, the fraud penalty must attach thereto. The petitioner, over a long period of years has shown a reckless disregard for the truth both in his statements to authorized representatives of the respondent and in the preparation of his returns. *222 He attempts to hide behind what he says were representations by a person whom he engaged to prepare his returns. This, in our opinion, is insufficient to excuse the omission of the large sums which the parties now agree represented the boat's income, which were understated in the petitioner's returns. Moreover, it has been conceded by the petitioner's counsel that he knowingly understated his income as a member of the boat's crew. This is sufficient to sustain the fraud penalty. For the several years involved there apparently was income realized from fishing operations which should have been reported by the petitioner's co-owners but was not reported by them. That income cannot be taxed to the petitioner. See , . Decision will be entered under Rule 50.